IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALTON D. BROWN | : | CIVIL ACTION |
| v. | : | |
| PRESIDENT AND CEO OF PRISON HEALTH SERVICES, INC., et al. | : | NO. 11-7935 |

FILED
MAR 16 2012
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

**MEMORANDUM**

SLOMSKY, J.                                    MARCH    , 2012

Alton D. Brown, a state prisoner, filed this civil rights action against prison medical staff, grievance officers, and other employees of the prison where he is incarcerated. He seeks to proceed in forma pauperis. For the following reasons, the Court will deny Brown's motion to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(g), without prejudice to his reinstating this case by paying the filing fee.

**I.   FACTS**

Brown's complaint is premised on his dispute with the defendants over diagnosis and treatment related to his prostate condition. Brown initially sought medical treatment because he was bleeding from the penis and anus, and experiencing problems during urination. Around January 6, 2011, Doctor Richard Kosierowski performed a prostate specific antigen (PSA) test, which revealed that Brown had an elevated PSA score. Accordingly, the doctor recommended that Brown proceed with one of two diagnostic tests, a digital rectal examination or a prostate biopsy.

1

In light of his long-standing distrust of the prison's medical staff, Brown refused to go ahead with any diagnostic tests or course of treatment because he "needed additional time to gather more information in order to . . . make an <u>informed consent</u>, which consisted of research[ing] prostate cancer and relevant diagnostic testing, checking [Dr.] Kosierowski's work history and qualifications, [and] verifying test results and related medical record entries, inter alia."[1] (Compl. ¶ 9.) In other words, instead of proceeding with diagnostic tests or treatment, Brown researched prostate cancer and other prostate-related ailments and attempted to procure medical records and information about the doctors who would be performing the tests and/or providing him care. When prison officials refused his requests for information, Brown filed grievances, further prolonging any diagnosis and/or treatment of his problems. (See id. ¶¶ 61(f) & (j) (alleging that defendants obstructed Brown's efforts to obtain the names and license numbers of the physicians who might be performing tests on him, which he would have used to

---

[1] Brown also suggests that the defendants falsified the test results in connection with a "plot to retaliate against him by infecting him with disease or causing damage during the evasive diagnosis." (Compl. ¶ 10.) To substantiate that assertion, Brown references other alleged denials of medical care and/or conspiracies to harm him that have been the subject of prior litigation in this Court. (E.D. Pa. Civ. A. Nos. 06-5405 (alleged failure to treat heart attack, high cholesterol, irregular heartbeat, high blood pressure, and low blood sugar), 08-743 (alleged failure to provide adequate food and hygiene items, and medical care for hepatitis C, post-traumatic stress disorder, and liver disease), 10-943 (alleged conspiracy to deny care for hepatitis C, liver damage, and knee injury sustained in 2003) & 10-3458 (same).)

run "a history check on [the doctors], before allowing [them] to perform testing"); id. ¶ 78 (indicating that two doctors told Brown that his "continuous grievance filings" were "interfering [with] and delaying care for his prostate problems").) In the meantime, it appears that at least one doctor sought to conduct a digital rectal examination on Brown on March 10, 2011, out of concern that Brown might have cancer, but that the test was not performed. (Id. ¶ 61(a).)

At some point, Brown concluded from his research that the diagnostic tests recommended by Dr. Kosierowski have "high rate[s] of failing to detect cancer" and would be subject to manipulation by the defendants. (Compl. ¶¶ 13-14.) He also concluded that a Magnetic Resonance Imaging test (MRI) was the proper diagnostic test under the circumstances, but the defendants refused to provide one. (Id. ¶¶ 16, 61(d).) Interestingly, despite Brown's apparent insistence on a MRI, the portions of the complaint in which Brown recites what he learned from his research reflect that the diagnostic tests suggested by Dr. Kosierowski accord with the relevant standard of care. (Id. ¶ 26 (DRE and PSA test are "[t]he main screening tools for prostate cancer"); id. ¶¶ 31-32 (indicating that prostate biopsy is appropriate follow up test when patient has high PSA score).)

By May/June 2011, it appears that Brown was to be scheduled for a biopsy on his prostate. Brown requested the name and license number of the neurologist who was going to perform the biopsy, but the defendants refused to provide that information.

(Compl. ¶ 61(j).)  At the time Brown filed the complaint in October 2011, the biopsy had not yet been scheduled or performed.

Based on the above facts, Brown claims that the defendants exhibited deliberate indifference to his serious medical needs by failing to diagnose and treat his condition, "induced" him to refuse care, and interfered with his efforts to obtain care by denying him access to medical records and background information on certain physicians.[2]  (Compl. ¶¶ 54, 61(h), 61(k), 62, 81-82.)  As a result of the defendants' alleged failure to conduct "adequate and time[ly] diagnostic testing," Brown alleges that his cancer – assuming he has cancer – is at risk of spreading and/or that he is risking damage to his kidneys and bladder.  (Id. ¶¶ 68, 72-73.)  Brown also alleges that he is "increasingly experiencing chills, fever, pain on urination, frequency [presumably of urination], and possibly edema."  (Id. ¶ 69.)

## II.  STANDARD OF REVIEW

Pursuant to § 1915(g), a prisoner who on three or more prior occasions while incarcerated has filed an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, must be denied in forma pauperis status unless he was in imminent danger of serious physical injury at the time that the complaint was filed.  Abdul-Akbar v. McKelvie, 239 F.3d 307, 312-13 (3d

---

[2] According to Brown, the defendants were motivated by their desire to retaliate against him because of his litigious behavior.

4

Cir. 2001) (en banc). As Brown has had at least three prior actions dismissed as frivolous, See Brown v. Blaine, No. 04-4618 (3d Cir. 2005) (Aug. 19, 2005 order) (listing three prior actions filed by Brown that subject him to § 1915(g)), he must establish that he was in imminent danger at the time the complaint was filed in order to proceed.[3] Allegations of imminent danger must be evaluated in accordance with the liberal pleading standard applicable to pro se litigants, although the Court need not credit "fantastic or delusional" allegations that "rise to the level of irrational or wholly incredible." Gibbs v. Cross, 160 F.3d 962, 966-67 (3d Cir. 1998) (quotations omitted).

## III. ANALYSIS

Detailed allegations that prison officials are failing or refusing to treat a plaintiff's serious medical condition, thereby causing him to deteriorate or languish in pain, generally satisfy § 1915(g)'s "imminent harm" exception.[4] See, e.g. Brown

---

[3] Brown is known to be an abusive litigant. See Brown v. Beard, 492 F. Supp. 2d 474, 476-77 (E.D. Pa. 2007) (detailing Brown's history of abusive litigation and observing that "Brown has found a tactic to circumvent section 1915(g) that has succeeded at least once: exploiting the exception for allegations of imminent danger of bodily harm"). Indeed, as a result of his litigious behavior, the Supreme Court has prohibited its Clerk of Court from accepting any of Brown's filings in non-criminal matters unless he pays the docketing fee. Brown v. Pa. Dep't of Corr., 555 U.S. 1166 (2009). In recent years, he has filed numerous cases in this district and the Western District of Pennsylvania, as well as numerous appeals and mandamus petitions in the Third Circuit.

[4] However, Brown's allegations of insufficient or inadequate medical care in cases filed in this district have not yet been found to satisfy § 1915(g)'s "imminent danger" exception. See Brown v. Lyons, Civ. A. No. 10-3458, 2011 WL 338824, at **3-4

v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004) (allegations that defendants stopped treating plaintiff's HIV and hepatitis resulting in severe pain and other physical effects); Ciarpaglini v. Saini, 352 F.3d 328, 330-31 (7th Cir. 2003) (allegations that defendants denied medication, resulting in panic attacks causing heart palpitations, chest pains, labored breathing, choking sensations, and paralysis in plaintiff's legs and back); McAlphin v. Toney, 281 F.3d 709, 711 (8th Cir. 2002) (allegations that delayed dental care was causing infection to spread in plaintiff's mouth). Brown's case is distinguishable from those cases because the factual allegations of the complaint establish that Brown himself is responsible for the delay in diagnosis and treatment for his prostate problems.

Brown was initially treated by Dr. Kosierowski for the symptoms he experienced with regard to his prostate. The doctor performed a test on Brown, which indicated a need for further diagnostic testing. The complaint is clear that the reason this diagnostic testing was not performed was because Brown refused it. Instead, he insisted on conducting his own medical research, digging around in his medical records due to his distrust of the medical department, and attempting to perform background checks on the doctors who might provide tests or other care. While Brown was entitled to delay his own care while he researched his

---

(E.D. Pa. Feb. 1, 2011); Brown v. Pa. Dep't of Corr., Civ. A. No. 10-943, 2011 WL 344078, at *3 (E.D. Pa. Feb. 1, 2011); Brown v. Beard, Civ. A. No. 08-743, 2010 WL 1257967, at *4 (E.D. Pa. Mar. 25, 2010); Brown v. Beard, 492 F. Supp. 2d 474, 479 (E.D. Pa. 2007).

symptoms and filed grievances to obtain records and tests he believed were appropriate, a prisoner may not claim that he is in imminent danger of serious physical injury when the alleged danger is a result of his own doing. See Brown v. City of Phila., Civ. A. Nos. 05-4160, 06-2496, 06-5408 & 08-3369, 2009 WL 1011966, at *12 (E.D. Pa. Apr. 14, 2009) (Slomsky, J.) ("No plaintiff should be able to state a claim of imminent danger if the plaintiff is responsible for placing himself in danger."); see also Cash v. Bernstein, Civ. A. No. 09-1922, 2010 WL 5222126, at **1-2 (S.D.N.Y Dec. 21, 2010) (revoking plaintiff's in forma pauperis status pursuant to § 1915(g) when plaintiff alleged serious leg wound because lack of medical treatment was due to plaintiff's "actively thwarting Defendants' efforts to treat his leg"); Russell v. Lappin, Civ. A. No. 06-C-19-C, 2006 WL 167448, at *2 (W.D. Wis. Jan. 19, 2006) (prisoner did not satisfy § 1915(g) when he was experiencing symptoms from acid reflux disease due to his refusal to take medicine in the dose recommended by the physician and disagreement with policy requiring him to pay the cost of his medication).

To hold otherwise would, contrary to the purpose of the Prison Litigation Reform Act, which implemented § 1915(g), permit abusive litigants like Brown to easily circumvent statutory requirements to continue filing abusive lawsuits. See Abdul-Akbar, 239 F.3d at 314 ("Congress enacted the PLRA in order to limit the filing of frivolous and vexatious prisoner lawsuits. To accomplish this, Congress curtailed the ability of prisoners

to take advantage of the privilege of filing I.F.P."). Furthermore, allegations that defendants are not providing the diagnostic testing that Brown wants – when they clearly offered to provide other admittedly appropriate testing – do not establish that Brown was in imminent danger of serious physical injury at the time he filed the complaint. Accordingly, Brown is barred by § 1915(g) from proceeding in forma pauperis.

## IV. CONCLUSION

For the foregoing reasons, Brown's motion to proceed in forma pauperis is denied without prejudice to his reinstating this case by paying the filing fee. An appropriate order follows.